UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LE' MARR S. TALLEY,<br>    Plaintiff | )<br>)<br>)<br>)<br>) |  |
| v. | )<br>) | Civil Action No. 12-30138-MAP |
| BERKSHIRE COUNTY HOUSE<br>OF CORRECTION,<br>    Defendant | )<br>)<br>)<br>)<br>) |  |

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 17)
August 16, 2013

NEIMAN, U.S.M.J.

  Le' Marr S. Talley ("Plaintiff"), proceeding *pro se*, brought this action against the Berkshire County House of Correction ("Defendant" or "BCHC") asserting various claims regarding his conditions of confinement. In particular, Plaintiff's handwritten complaint sets forth six counts labeled as follows: "(1) Insufficient Medical Attention"; "(2) Tamperment with Mail (outgoing)"; "(3) Dietary Meals"; "(4) Flawed Grievance Procedure"; "(5) Unlawful Hamperment of Law Research"; and "(6) Cleaning Agents." In addition, Plaintiff included in his complaint a separate, typed list of general grievances which appear to be on behalf of other inmates who are not parties to this action.

  Defendant has filed a motion to dismiss, which has been referred to this court by District Judge Michael A. Ponsor for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendant's motion be granted.

I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept the allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). Although "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010), the Supreme Court made clear under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that only a complaint that states a plausible claim for relief on its face will survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Still, a *pro se* plaintiff is "entitled to liberal construction of his allegations, no matter how inartfully pled." *Stern v. Haddad Dealerships of the Berkshires, Inc.*, 477 F. Supp. 2d 318, 321 (D. Mass. 2007).

II. PLAINTIFF'S COMPLAINT

Plaintiff's complaint, as best the court can determine deciphering Plaintiff's handwriting, contains the following allegations:

> 1. "Have had symptoms of discharge, and burning when urinating, test negative for sexually transmitted diseases, held in BCHC for 4 months, keep complaining, same symptoms, not sent to outside medical attention." (Compl. ¶ 1.)

2

2. "Mail sent out, through staff held at facility and opened, then returned to plaintiff after seven days." "10 privileged pieces of mail to be sent, assumed to be sent out, again wasn't, no record on mailing list of . . .[1] or to resend denied." (Id. ¶ 2.)

3. "I am allergic to peanuts and chocolate, in medical records at facility, still refused meal, told repeatedly after request to supervising officer no." (Id. ¶ 3.)

4. "Grievance procedure is fundamentally flawed, misleading, and no formal legitimate responses or investigations done on the matters at hand. Legitimate grievances are responded to with unknowledgeable an uninvestigative responses." (Id. ¶ 4.)

5. "Unable to facilitate research for case, given extra time, but limited and hindered to law and what the plaintiff needs to search and acquire better understanding and [ineligible] in law to have adequate defense." (Id. ¶ 5.)

6. "Certain chemicals are suppose to be in supply to clean various germs, and are mandated, given soap and water to clean living quarters." (Id. ¶ 6.)

In addition to the handwritten portion, Plaintiff's complaint also includes two typed pages of grievances, which appear to be a copy of a letter Plaintiff previously sent to a government agency. None of these grievances, however, pertain to Plaintiff in particular but, rather, appear to be on behalf of other inmates.[2]

Grievance number 1 alleges that inmates have not been provided "good time" for a residential substance abuse treatment program even though such program is "clearly educational." Grievance number 2 alleges that BCHC does not provide "numerically tracked grievance or appeal forms for inmates with proper carbon copy to [hand

---

[1] The last line on the first page of Plaintiff's complaint is illegible, apparently having been cut off in a photocopier.

[2] The letter begins with "To whom it may concern" and continues: "Could you please look very carefully into these following pressing concerns going on at the Berkshire House of Correction, 467 Cheshire Rd., Pittsfield Ma, 01201 and forward information to the appropriate agency who can address the issues at hand. Thank you."

immediately] to inmate upon submitting form to acting officer on duty acknowledging the officer received grievance or appeal validating inmate record of submission and that staff now has it in their possession." Grievance number 3 asserts that, BCHC is violating 103 C.M.R. § 942.04, by "[g]iving inappropriate inmate recommendations, 48 [hour] hearing notifications and recommendations, not documenting appropriate reasons or any reasons for a[n] inmate absence classification hearing etc."

Grievance number 4 alleges that BCHC gives "out unreasonable [disciplinary] measures frequently on clearly minor violations." Plaintiff then cites as an example "inmate 6724," who was "given 23 [hour lock-in] minor violation for being in another's cell, absolutely no prior institutional [disciplinary] record." Plaintiff further alleges that this inmate "lost level 5 outside community work release privileges, no longer [able] to pay child support to family[,] sent to other housing unit[,] reduced to level 2" and that "[f]amily and inmate suffer."

Grievance number 5 alleges that "[a]ll BCHC staff/ law library[,] ADS Sheridan, Major Taylor continuously denying inmates from making copies of facility grievances, appeal forms, classification sheets, filed requests, which are obviously used as a evidentiary legal documents in presenting case to multiple agencies assistance. Also denying inmates ribbons for typewriter and highlighter in the housing units for inmates to do legal typing/ legal work."

Grievance number 6 alleges "[m]aintenance issues such as mildew in several cells in f unit 210, 110, 111, 211, [excessive] water seepage into cells not caulked at the lower perimeter of walls inside and outside building." Plaintiff further alleges that there are "[a]nts in several cell[s] [obviously] coming in from the outside," "[s]tructural

concerns [with] c-pod wall, no bleach solution for cleaning shower to kill bacteria and mildew, [and] roof leaks in multiple housing units."

Under grievance number 7, Plaintiff alleges "[n]o diabetic meals for type 1 and type 2 diabetic inmates, excuse given no money in the budget."  Grievance number 8 alleges that "[m]edical [is] continuously refusing sick inmates antibiotics . . ., refusing inmates antibiotic ointments, antifungal cream, vitamins, bandaids" and that "[n] q-tips [are] given to inmates at all for ear cleaning."

Grievance number 9 alleges that "7 out of 10 Community corrections inmate participants nonsmokers tested 2% carbon [monoxide] level on the breath meter the week of [September] 28, 2011" and that there is "high carbon [monoxide] levels is jail."  Furthermore, Plaintiff alleges that there is "[n]o separate housing unit for community corrections participants and no following programing set up or offered [for] community correction participants who have clearly earned level 5 forward progression work release/ stepdown bracelet."  Plaintiff also alleges that inmates are "made to feel forced into staying in program after completing 90 day program requirements."

Grievance number 10 alleges "[a]t times extremely excessive use of force on inmates/ brutality."  Plaintiff provides as an example "inmate 7007 incident [on] July 26, 2011," during which a "camera in b-pod between 5:05 p.m. and 5:40 p.m. [shows] clear excessive force by 2 officers, with no threat."

Lastly, grievance number 11 alleges that "BCHC staff do[] everything in their power to stop inmates from helping other inmates with their legal work . . . [w]hen a[n] inmate can't read, write, type."

III.  DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed on three separate grounds. First, Defendant argues, Plaintiff failed to comply with Fed.R.Civ.P. 4(m) by serving process over 120 days after filing the complaint. Second, Defendant argues that the complaint lacks sufficient factual allegations as to plausibly suggest entitlement to relief. And third, Defendant argues that Plaintiff has not exhausted his administrative remedies. Since the court agrees with Defendant with regard to its second argument, it will recommend on that ground alone that Plaintiff's complaint be dismissed.

A. <u>Failure to Serve within 120 Days</u>

Defendant argues that the court should dismiss Plaintiff's complaint for failure to comply with Fed.R.Civ.P. 4(m) because he failed "by a wide margin" to effectuate service within 120 days of filing the complaint. Plaintiff failed to address this issue in opposing Defendant's motion to dismiss, but the court concludes nevertheless that dismissal on this ground is not appropriate under the circumstances.

By way of background, Plaintiff filed his complaint on August 2, 2012, but failed to pay his filing fee. As a result, Judge Ponsor that same day ordered Plaintiff to either pay the $350 filing fee or seek leave to proceed *in forma pauperis*. Thereafter, Plaintiff filed a motion for leave to proceed *in forma pauperis*, which motion was allowed on November 8, 2012. A docket entry from December 28, 2012, however, indicates that the mail sent to Plaintiff on November 8th, which included the court's ruling on his *in forma pauperis* motion, was "returned as refused" and was re-mailed to Plaintiff that day. In addition, a docket entry from January 11, 2013, indicates that Plaintiff was mailed a blank summons for the first time that day. Defendant was served the

completed summons on March 8, 2013.

> Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:
>
> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But it the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Although Defendant is correct that the complaint here was not served until 218 days after Plaintiff originally filed his complaint, it was served only 56 days after the clerk issued a blank summons to Plaintiff. Under these circumstances, and in light of Plaintiff's *pro se* status, the court believes it would be inappropriate to dismiss the action on account of Plaintiff's failure to comply with Rule 4(m)'s 120-day requirement. *See* Fed.R.Civ.P. 4(m), advisory committee's notes, 1993 amendments ("The district court should also take care to protect *pro se* plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition.") (citing *Robinson v. America's Best Contacts & EyeGlasses*, 876 F.2d 596 (7th Cir. 1989)).

B. <u>Failure to State a Claim</u>

Defendant's primary argument is that Plaintiff's complaint fails to state a claim upon which relief can be granted. The court agrees.

Plaintiff's complaint fails to allege even the most basic facts which would put Defendant on notice as to his specific claims. *See Carter v. Newland*, 441 F.Supp.2d 208, 214 (D.Mass. 2006) ("The critical requirement of Rule 8 is that the plaintiff's complaint give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). As the First Circuit has explained, "the complaint should at least set forth minimal facts as to who

did what to whom, when, where, and why -- although why, when why means the actor's state of mind, can be averred generally." *Educadores Puertorriquenos en Accion v. Hernadez*, 367 F.3d 61, 68 (1st Cir. 2004).  Nowhere in Plaintiff's six counts does he allege which BCHC employees committed the various acts or when they occurred.  He also fails to provide anything more than vague and conclusory allegations.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557)).

While the typed grievances are somewhat more specific, none of them appear to apply to Plaintiff; rather, as mentioned, they appear to be on behalf of other inmates.  Thus, as was true in *Alves v. Murphy*, 530 F.Supp.2d 381, 386 (D.Mass. 2008), Plaintiff "has not alleged facts that he himself has been harmed in any of the ways he alleges here."  *See also Purvis v. Ponte*, 929 F.2d 822, 825 n. 6 (1st Cir. 1991) (plaintiff inmate lacks standing to complain about the constitutional rights of other inmates)*; Shedlock v. Murphy*, 2007 WL 2746803, at *1 (D.Mass. Sept. 13, 2007) (rejecting generalized complaints about the Treatment Center, and noting that "[s]uch standing as the plaintiffs may have to obtain declaratory or injunctive relief must be carefully tailored to address the particular facts and circumstances presented by the plaintiffs as harm to them personally").

In addition to these pleading deficiencies, there is a more fundamental issue with Plaintiff's complaint.  As Defendant argues, Defendant is protected by Eleventh Amendment state sovereign immunity because it is a state agency.  As explained in

*Gallo v. Essex County Sheriff's Dep't*, 2011 WL 1155385, at *1 (D.Mass. March 24, 2011),

> In 1999, the Massachusetts legislature abolished the governments of six counties, including [Berkshire County], Act of Nov. 16, 1999, ch. 127, as codified in MASS. GEN. LAWS ch. 34B § 1. Under the applicable legislation, all of [Berkshire] County's 'functions, duties and responsibilities . . . including, but not limited to, the operation and management of the county jails and house of correction . . . [were] transferred . . . to the commonwealth. MASS. GEN. LAWS ch. 34B, § 4. In addition, the Commonwealth assumed '[a]ll valid liabilities and debts of' [Berkshire] County, *id.* § 5, and obtained all its 'rights, titled and interest in real and personal property,' *id.* § 6(a), and '[a]ll valid leases and contracts,' *id.* § 7."

Accordingly, Defendant is an "arm" of the Commonwealth and, as such, is immune from suit for damages under the Eleventh Amendment. *See Maraj v. Massachusetts*, 836 F.Supp.2d 17, 24-25 (D.Mass. 2011); *Kelley v. DiPaola*, 379 F.Supp.2d 96, 100 (D.Mass. 2005); *Brown v. Massachusetts*, 2012 WL 588800, at *4 (D.Mass. Feb. 21, 2012); *Gallo*, 2011 WL 1155385, at * 3-5.

To be sure, as Defendant acknowledges, Plaintiff's complaint does not include a prayer for relief, conceding perhaps that prospective injunctive relief may be available pursuant to the exception established in *Ex parte Young*, 209 U.S. 123 (1908). The court notes, however, that Plaintiff has only sued Defendant and not any of its officials. *See Parella v. Retirement Bd. Of Rhode Island Employees' Retirement System*, 173 F.3d 46, 55 (1st Cir. 1999) ("[C]ourts have the discretion to raise Eleventh Amendment questions sua sponte."). As the First Circuit has explained,

> [a] plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment. *See, e.g., Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 114 n.1 (1st Cir. 2003) ("Under *Ex parte Young* the defendant state officers were proper defendants for prospective injunctive relief, but the Commonwealth or the Department qua

Department were not.")

*Poirier v. Massachusetts Dep't of Correction*, 558 F.3d 92, 97 n.6 (1st Cir. 2009).  Thus, Defendant is protected by state sovereign immunity regardless of the relief Plaintiff seeks.

Accordingly, the court recommends dismissal of Plaintiff's complaint in light of Plaintiff's inadequate pleading and the immunity afforded Defendant under the Eleventh Amendment.

C.  <u>Failure to Exhaust Administrative Remedies</u>

In the interest of completeness, the court will also address, albeit briefly, Defendant's argument that Plaintiff failed to exhaust administrative remedies.  The court would not recommend dismissal on this ground.

The Prison Litigation Reform Action ("PLRA"), 42 U.S.C. § 1997(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has explained, however, that "failure to exhaust is an affirmative defense under the PRLA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, "[a]n inmate's complaint is subject to dismissal for failure to exhaust if the allegations in the complaint, taken as true, suffice to establish the failure to exhaust." *Facey v. Dickhaut*, 892 F.Supp.2d 347, 354 (D.Mass. 2012) (citing *Jones*, 549 U.S. at 215).

Here, in the court's view, it is not clear from the complaint that Plaintiff has failed

to exhaust his administrative remedies. In fact, Plaintiff attached to his complaint a number of internal "Inmates Grievance Forms" and "Inmate Grievance Appeal Forms" submitted to Defendant.[3] Accordingly, the court cannot say, at this stage of the proceedings, that Plaintiff has failed to comply with the PRLA's administrative exhaustion requirement.

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion to dismiss be ALLOWED.[4]

DATED: August 16, 2013

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[3] The court notes that Plaintiff's handwriting is too light to read in most of these photocopied forms. Those forms which the court can decipher are nonetheless vague and difficult to follow.

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980). See also Thomas v. Arn, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.